MARY EMMA JOHNSON

*v.*

ALBERT J. HAHNE et al.

[Filed April 24th, 1901.]

1. Where a building, having an easement of light and air pertaining to certain windows, is raised, by which the location of the windows is substantially changed, the easement is not continued as to such windows in their new position.

2. Where windows, to which an easement of air and light pertains, are permanently closed for over forty years, and no effort to open such windows has been made, equity will not enjoin the erection of a building on an adjoining lot which will interfere with such easement if it still exists.

On bill for injunction. Heard on bill, answer, amended answer, replication and proofs.

*Mr. Lindley M. Garrison,* for the complainant.

*Mr. Arthur R. Denman* and *Mr. Frederick G. Burnham,* for the defendants.

Johnson *v.* Hahne.

Emery, V. C.

Complainant is the owner of a lot, 52 Halsey street, Newark, and defendants are the owners of lot, 50 Halsey street, adjoining complainant's lot on the north. Upon complainant's lot there is a dwelling-house, built on or close to her north line, and upon defendants' lot there was, at the time of their purchase of the lot in 1899, a brick dwelling-house, extending back beyond complainant's dwelling and also higher than complainant's house. There was a space of about four feet between the two houses, the vacant space being altogether, or nearly so, on defendants' lot, No. 50. There are, and were at the time of defendants' purchase of lot 50, three windows in the north side of complainant's house, opening, or which can open, towards this four-foot space, two of the windows being in the second story and one in the third, which is an attic story, the window being in the gable. Defendants purchased lot 50 for the purpose of erecting thereon and on adjoining lots, covering nearly half a city block, a store building, and they have torn down the brick building on the lot 50, and intend to erect on the southerly boundary line of their lot, being the northely boundary of complainant's lot, a wall extending along the whole distance covered by complainant's house, and to at least the full height of complainant's house and of the store building, which is about ninety feet in height. The building, if so erected, will deprive complainant's dwelling of light and air through her windows, and the question in the case is whether complainant has the right to protection against such deprivation. The original easement for light and air over lot 50 to the dwelling on lot 52 arose from the facts that lots 50 and 52 were originally owned as a single lot by one Samuel Sayre, who purchased the property as a single lot, fronting fifty-two feet on Halsey street, on June 3d, 1831, and in 1832, while still owning the entire lot, erected on lot 52 a frame dwelling-house, with three windows on the north side thereof, toward the lot now called No. 50. This house (which was afterwards raised up one story) was originally a one-story house, with an attic, and the windows in the house (being the same as the windows now there) were originally located two on the first story and one in the second story or

attic. One of the windows in the first story, the one nearest Halsey street, opened into a hall running along the north side of the house, and the other window of the first story was in an extension of the main building and opened on a room in the extension used for a dining-room. On October 22d, 1832, and after the completion of the one-story house, Samuel Sayre conveyed lot 52, with the house therein erected, to Davis Sayre, and, by subsequent conveyances and the will of her mother, title to this house and lot became vested in the complainant, who resided in it up to about the time when defendants began the erection of their building. Lot No. 50, on the north, remained the property of Samuel Sayre until his death, in 1851, and on the partition of his estate the lot was conveyed to William R. Sayre, under whom defendants claim. Complainant went to reside in the house originally built on lot No. 52 in the year 1854, and at that time, according to her evidence, the brick house had been erected on lot No. 50 about four feet from complainant's house. The brick house was probably erected between 1851 and 1854 by William R. Sayre, the son of Samuel Sayre, the original owner. In 1855 the house on complainant's lot, No. 52, was raised up one story and a lower story built on the foundation walls. There were no windows in the new first story, and the old house was raised without changing the location of the old windows in the frame of the house itself. The entrance to the new first story is by a door opening on Halsey street, into a hall which runs along the north side of the house to the extension, and from this hall stairs lead up to the second hall, which was the original first-story hall, and was changed by replacing the front door with a window opening on Halsey street. The window opening from this present second-story hall toward lot No. 50 has closed board shuttters, and for many years (just how many does not appear) these shutters have been closed, and a wardrobe, or other furniture, has been placed against the window. The other window on this story, which, before the building was raised, furnished light and air to the room in the rear of the first story used as a dining-room, has stationary slat blinds, partly open, and furnishes light and air to a room used as a sitting-room, which

room has also windows on the south side. The attic room has no other window or source of light than the present window, either before or after the house was raised.

In reference to the right to an easement of light and air over defendants' lot to complainant's house, it was admitted by counsel on both sides that, under the decisions, there could be no contest in this court in reference to two propositions. The *first* is, that, on the separation of the title of the two lots (50 and 52), by the conveyance of lot No. 52, with the building thereon erected, an easement for light and air over lot No. 50 was created, or arose by implication, in favor of the building then erected on the grantee's lot, No. 52. *Robeson* v. *Pittenger, 1 Gr. Ch. 57* (*Chancellor Pennington, 1838*); *Sulphen* v. *Therkelson, 11 Stew. Eq. 318, 322* (*Chancellor Runyon, 1884*); *Greer* v. *Van Meter, 9 Dick. Ch. Rep. 270, 272* (*Vice-Chancellor Reed, 1896*). The *second* is, that complainant did not, and could not, acquire an easement for light and air over defendants' lot in the changed location of the windows merely by adverse use or enjoyment since 1855. *Hayden* v. *Dutcher, 4 Stew. Eq. 217* (*Vice-Chancellor Van Fleet, 1879*). The questions argued in the case were, therefore, *first,* whether the original easement acquired by the conveyance of lot No. 52, on the separation of the title, extended to the same windows in their location as changed by the raising of the house, and *second,* if it did not extend to the windows in their changed location, then whether the easement for the windows in their original location in the north wall of the house still existed and could be now re-established and reasserted, or whether the original easement has been abandoned. In *City National Bank* v. *Van Meter, 14 Dick. Ch. Rep. 32* (*1899*), the facts were that the owner of a building which had an easement of light and air to a window therein, removed the building for the purpose of erecting a new one, the plans for the erection of the new building showing a new window in substantially the same location as the window of the old building. Vice-Chancellor Reed considered the question involved to be the single question, whether the easement was abandoned by the destruction of the old building. He held, as the result of an examination of that question, that the abandonment of an

easement of this character was a question of intention and was a question of fact, and that this intention of abandonment could not be found to exist where the old building was torn down, and the intention was to erect at once in its place a new building, in which a window should occupy substantially the same place as that occupied by the window in the old building. The case necessarily involved an examination into the nature of the right of an easement of light, so far as related to its being attached to a particular locality in the building erected on the dominant tenement, and the case on which the vice-chancellor relied as stating the rule upon this point of *changing locality* held that no alteration in the plan of the windows by the owner of the dominant tenement, either by advancing or setting back the buildings, would destroy the right to light so long as he could show that he is using through the new aperture in the wall of the new building the same, or a substantial part of the same, light which passed through the old aperture into the old building, and that the right to the light might be claimed in respect to any building which is enjoying the whole or a substantial part of the light which passed into the dominant tenement through the old aperture. *Scott* v. *Pape, 31 Ch. Div. 554 (C. A., 1886)*, reviewing all the previous cases. In reference to the subject of the locality of the old and new windows, Vice-Chancellor Reed also says (*Ibid. 282*): "If the building be torn down and the locality of the old windows, from delay in building, or from a failure to preserve evidence of their situation, cannot be proved, the right would be considered as lost by abandonment." The opinion of the vice-chancellor was adopted by the court of errors and appeals, in affirming his decree granting an injunction. *47 Atl. Rep. 1131 (November, 1900)*. The decision in this case, as I read it, rested on the theory that the right to the use of the new window existed, because it occupied substantially the same location as the old window, and finally settled the rule in this state, that the owner of the dominant tenement was entitled to an easement of light and air through the new apertures in the new building if, by the new structure, he was enjoying the same substantial right in the same *location* as in the old building. If this was the

*ratio decidendi* of the decision, it controls this case. so far as complainant's rights depend upon the easement arising out of the original conveyance of the lot, and the owner of the dominant tenement claiming merely under the original grant can have no right to an easement of light in the new windows, the locations of all of them being substantially changed from the location of the old windows. And this conclusion, as to the effect of changing the location of the windows, must also be reached if the question can be considered as still open. Any substantial change in the location of a window must, as it seems to me, be necessarily a substantial change in the burden on the servient tenement, and this is the doctrine of the cases cited by Vice-Chancellor Reed and of other cases cited by defendants' counsel. *Fowlers* v. *Walker, 49 L. J. Ch. 598 (Vice-Chancellor Bacon, 1880)* ; *affirmed on appeal, 51 L. J. Ch. 443 (1882)* ; *Turner* v. *Spooner, 1 Drewry & S. 467 (Vice-Chancellor Kindersly, 1861)*. The right to restrict an owner of adjoining land from building on his own land, whether gained by use or grant, must be confined to the subject-matter of the use or grant, and the restriction on the owner of the servient tenement must be substantially the same. The reason, as stated by Mr. Justice Patterson, in an opinion in *Blanchard* v. *Bridges, 4 Adolph. & E. 176, 191 (1835)*, a leading case, is that the act of the owner of the adjoining land, from which the right of unobstructed access of light and air over the land flows, must have reference to the state of things at the time when it is supposed to have taken place, and, as the act of the one is inferred from the enjoyment of the other owner, it must be measured by that enjoyment, and the consent therefore cannot fairly be extended beyond the access of light and air through the same aperture (or one of the same dimensions and in the same position) which existed at the time when such consent was supposed to be given. Both convenience and justice require this limitation, for if a new window, varying in size, elevation or position, may be substituted for the old one, without the consent of the owner of the adjoining land, it would be necessary to submit to juries questions of degree, often of a very uncertain nature and upon very unsatisfactory evidence. *Hutchinson* v. *Copestake, 9 C. B. (N.*

S.) *363 (Exchequer Chamber, 1861),* approves this rule, and the court refused to assent to the argument that it was a question of a greater amount of inconvenience to the servient tenement, resulting from a change in location. The cases referred to by complainant's counsel do not, when read in connection with the facts involved, establish any different rule.

Complainant's bill alleges that the windows of her house, as at present located, are the windows of the house as originally built, and the bill was framed on this theory. The complainant's own evidence having disclosed, however, that this was a misapprehension, and that Mr. Dreer, the complainant's witness, had the house raised in 1855, complainant now claims that if the windows in their changed condition have no right of access for light and air, she has the right to restore or re-establish the windows in the original location and have this right established in the present bill.

If this question were properly at issue on the pleadings, and within the jurisdiction of the court, I should be inclined, on the evidence before me, to hold that the easement for the old windows had been abandoned. As to the light of the first-story windows, the facts are these: a solid wall has been built, and all effort to obtain light for that story, from windows opening on the adjoining lot, has been abandoned for over forty years, and purchases of the adjoining property have been made without notice of any claim to such an easement. The same observation may be made about the closing, on the new second story, of the location of the old attic window, and it may also be noted that this window, if replaced, would probably open on the stairs leading from the second to the third story, and be of no use or benefit in the enjoyment of the hall, which already receives so much light that the new second-story window has been unopened for years. But the whole question as to the complainant's right to restore the ancient windows, or her right to prevent obstruction, if restored, is one of legal right. There is not, in reference to this right, a question calling for equitable interference in advance of a determination of the legal right in the courts of law, as there is in reference to the right now claimed to the existing windows which were used and necessary for the beneficial en-

joyment of her residence. The old windows, having been closed for forty years, and the defendants having purchased also for the express purpose of building on their own land, there is no foundation, in my judgment, for now determining in this court, and in advance of any restoration or attempt to restore the old windows, that complainant has such right and that defendant must be enjoined from obstructing these lights when restored. This question as to this right must be first settled by an action at law, when the right of access of light and air to the old windows is, in fact, interrupted. There are in complainant's bill allegations (made as if the bill were filed under the act to quiet title) of possession of the easement, but as to the old windows there is evidently no such possession, and inasmuch as the act of defendant sought to be enjoined is itself an interference with the peaceable possession, which is suable at law, jurisdiction under this act cannot be invoked in the case. *Allaire* v. *Ketcham, 10 Dick. Ch. Rep. 168 (1896)*.

There is a line of cases which holds that where the owner of the adjoining servient tenement consents to the alteration of the location of the lights in the course of the rebuilding, by the owner of the dominant tenement, and the latter owner makes the alteration and lays out money in rebuilding, relying on this consent, a court of equity will enjoin interference with the lights in the altered location. *Cotching* v. *Bassett, 32 Beav. 101 (Romilly, M. R., 1862)*. In the present case, the erection of the three-story brick building within four feet of the complainant's house interfered, to some extent, with the easement previously enjoyed, and if the raising of complainant's house, changing the location of the windows, had taken place before or contemporaneously with the erection of the brick house, these facts, in connection with the long-continued enjoyment of the use of the light and air from the new windows, might, perhaps, have been sufficient to justify a court of equity in finding a consent to the change of location of the windows. But as the complainant's house was raised subsequently to the erection of the brick house, this raising of the house and changing the location of the windows may just as reasonably be attributed to the owners being willing to take the risk, as to their building, of any removal or change

in the larger brick building on the adjoining lot. There is no evidence which would justify me in finding that this subsequent raising of the house and change in location of the windows was by the consent of the owner of the adjoining land as a substitution for the old windows. The whole case before me, therefore, depends on the complainant's right to light and air for the new windows, as resting on the circumstances of the original structures and the subsequent conveyances and on the uses of these windows, and I reach the conclusion that the right to prevent defendant's erection of a building on his own lands, which will interfere with the light to these new windows, has not been established, and the bill must be dismissed.